**Khamari MUNDY, Appellant**

v.

**COMMONWEALTH of Kentucky, Appellee**

**NO. 2016-CA-001194-MR**

Court of Appeals of Kentucky.

JULY 28, 2017; 10:00 A.M.

BRIEF FOR APPELLANT: Erin Hoffman Yang, Assistant Public Advocate, Frankfort, Kentucky.

BRIEF FOR APPELLEE: Andy Beshear, Attorney General of Kentucky, Perry T. Ryan, Assistant Attorney General, Frankfort, Kentucky.

BEFORE: COMBS, JOHNSON, AND J. LAMBERT, JUDGES.

## OPINION

LAMBERT, J., JUDGE:

Khamari Mundy appeals from a Clark Circuit Court judgment imposing a total sentence of five years for first-degree trafficking in a controlled substance; trafficking in marijuana; and being a convicted felon in possession of handgun. Mundy entered a plea of guilty to the charges conditioned on his right to appeal the trial court's denial of his motion to suppress evidence. We affirm.

Richmond City Police Officer Monty Corbett was the sole witness at the suppression hearing. He testified that a woman named Donna Connor called 911 to report that her car had been stolen, and that she was pursuing the stolen car in another vehicle, heading westbound on the interstate. Officer Corbett drove to exit 94 of the interstate to intercept the vehicles.

When he arrived at the exit at about 9:21 p.m., he saw two unoccupied cars parked on the shoulder. A woman, Donna Connor, and three men, one of whom was Mundy, were standing on the shoulder, talking. Officer Corbett separated these individuals and asked them to keep their hands where he could see them. They all responded in the negative when he asked whether anyone had any weapons. He told them to stay where he could see them, kept the spotlight from his cruiser on them, and then returned to the cruiser with their driver's licenses to determine whether any of them had outstanding arrest warrants.

Several other police officers arrived at the scene and began interviewing Connor and the three men. Connor told the officers that she had lent the stolen car to her boyfriend on the assumption that only he would drive it. When she called him, she discovered that he had allowed the three other men to drive it. Because they did not have her permission, she considered the car to be stolen. She told the officers that she did not want to charge the men with theft of the vehicle but that she did not want them to use her car.

Meanwhile, the police dispatcher informed Officer Corbett that Denzel Hill, the driver of the car, had a suspended license. Officer Larratt proceeded to arrest Hill. While Larratt was patting Hill down, Officer Corbett saw Mundy's hand move up his side to his waistband and down into his pants. Fearing that Mundy was reaching for a weapon, Officer Corbett and Sergeant Riley tackled him. Corbett reached for Mundy's hand and felt a metal object which he believed was a weapon. Corbett told the other officers that Mundy had a gun. The officers searched Mundy and found a pistol and a bag of crack cocaine inside his underwear.

The length of time that elapsed between Officer Corbett's arrival at the scene at 9:21 p.m. and the time of Mundy's arrest is not firmly established. The Uniform Citation in the record reports that he was arrested at 9:52 p.m., whereas Officer Corbett testified that he arrested Mundy at 10:15 p.m.

Following Officer Corbett's testimony, defense counsel conceded that the stop itself was lawful but argued Mundy should have been released immediately after Connor explained the circumstances underlying the supposed theft of her car. Although the trial court made no specific finding regarding the length of the detention, it did make an oral finding that the evidence was properly recovered in the course of a lawful protective search, and denied the suppression motion.

The grand jury had indicted Mundy on the following charges: first-degree trafficking in a controlled substance, first offense (cocaine); trafficking in marijuana less than 8 ounces; possession of a handgun by a convicted felon; and being a persistent felony offender in the second degree.

Following the denial of his suppression motion, Mundy accepted a plea agreement from the Commonwealth pursuant to which he entered a conditional plea of guilty to the first three charges. The charge of being a persistent felony offender in the second degree was dismissed. This appeal followed.

An appellate court's standard of review of the trial court's decision on a motion to suppress requires that we first determine whether the trial court's findings of fact are supported by substantial evidence. If they are, then they are conclusive. Based on those findings of fact, we must then conduct a *de novo* review of the trial court's application of the law to those facts to determine whether its decision is correct as a matter of law.

*Commonwealth v. Neal*, 84 S.W.3d 920, 923 (Ky.App. 2002) (footnotes omitted).

Mundy argues that his detention by the police was unlawfully protracted beyond the original purpose of the traffic stop, and consequently the fruits of the police search must be suppressed. He relies on a line of cases in which a motorist or a passenger was detained by the police after the execution of an initially legal traffic stop, either to await a drug-sniffing dog, or for further police investigation, even though there was no reasonable suspicion that the individuals were involved in drug or other criminal activity. The appellate courts in these cases held that the detention was improper because it exceeded the initial scope and purpose of the stop. *See, e.g., Turley v. Commonwealth*, 399 S.W.3d 412 (Ky. 2013); *Rodriguez v.*

*United States*, ___ U.S. ___, 135 S.Ct. 1609, 191 L.Ed.2d 492 (2015); *Davis v. Commonwealth*, 484 S.W.3d 288, 292 (Ky. 2016). As the *Davis* court explained,

Although an officer may detain a vehicle and its occupants in order to conduct an ordinary traffic stop, any subsequent detention ... must not be excessively intrusive in that the officer's actions must be reasonably related in scope to circumstances justifying the initial interference. Thus, an officer cannot detain a vehicle's occupants beyond completion of the purpose of the initial traffic stop unless something happened during the stop to cause the officer to have a reasonable and articulable suspicion that criminal activity [is] afoot. If the traffic stop is prolonged beyond the time required for the purpose of the stop, the subsequent discovery of contraband is the product of an unconstitutional seizure.

*Davis*, 484 S.W.3d at 292 (citations and internal quotations omitted).

Mundy contends that once the police officers established that Connor's stolen car report was the result of an apparent misunderstanding rather than an actual crime, he should have been free to leave immediately.

The Commonwealth questions the applicability of the traffic stop case law because Officer Corbett did not effectuate a routine traffic stop based on a traffic violation. Instead, the Commonwealth argues Corbett acted with probable cause to investigate the circumstances of a possible car theft as reported by the victim, Connor. While the police were exploring the circumstances of Connor's call and arresting Hill for driving on a suspended license, Mundy reached into his underwear to obtain a gun. The police then acted to protect themselves.

■ Under either scenario, Mundy was not unreasonably detained. "Under *Terry v. Ohio* [392 U.S. 1, 88 S.Ct. 1868, 20 L.Ed.2d 889 (1968)], a police officer may briefly detain a person for investigative purposes if the officer has a reasonable suspicion, supported by articulable facts, that the person has engaged or is about to engage in criminal activity. And if the officer believes the detained person is armed and dangerous, the officer may also frisk for weapons." *Williams v. Commonwealth*, 364 S.W.3d 65, 66–67 (Ky. 2011) (footnote and citation omitted). The police in this case were investigating a potentially volatile and dangerous situation involving the victim, three unidentified men and what was reported as a stolen car by the side of the interstate in the evening hours. There was no evidence adduced that they detained Mundy beyond the time reasonably necessary to complete their investigation.

The final judgment and sentence of imprisonment of the Clark Circuit Court is affirmed.

ALL CONCUR.